UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ALL ELITE WRESTLING,**
**LLC, a Delaware limited liability**
**company, and ANTONY KHAN in**
**his capacity as the Chief Executive**
**Officer, General Manager, and Head of**
**Creative of All Elite Wrestling, LLC**

   Petitioners,

v.              Case No. 3:25-cv-_____

**RYAN NEMETH,**

   Respondent.
_____/

**PETITION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL**
**ARBITRATION ACT, 9 U.S.C. § 4**

Pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), Petitioners, All Elite Wrestling, LLC ("AEW"), and Antony ("Tony") Khan, in his capacity as the Chief Executive Officer, General Manager, and Head of Creative of AEW (AEW and Khan collectively referred to herein as "Petitioners"), file this Petition to Compel Arbitration against Ryan Nemeth ("Nemeth" or "Respondent") and state:

**Jurisdiction**

1.  Petitioner AEW is an LLC organized under the laws of the state of Delaware with its principal place of business in Jacksonville, Florida. AEW is wholly owned by Beatnik Investments, LLC, a Florida LLC, with its principal place of

business in Naples, Florida. Beatnik Investments, LLC's natural persons members are domiciled in Illinois and Florida.

2. Petitioner Khan is domiciled in Florida and resides in Duval County.

3. Respondent, Ryan Nemeth, is domiciled in California and a Los Angeles County resident.

4. There is complete diversity of citizenship between the parties and more than $75,000.00, exclusive of interest and costs, is at stake in this controversy; therefore, this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

5. Venue is proper in the Middle District of Florida, and this Court has personal jurisdiction over Respondent because Respondent's subject Independent Contractor Wrestler Agreement with Petitioner AEW (**Exhibit A**) ("Agreement")[1] provides that "any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement are to be resolved by final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures." *See* Exhibit A at Section 16.1.

---

[1] Contemporaneously with the filing of this Petition, Petitioners will file a Motion seeking permission to file a copy of Respondent's Independent Contractor Wrestler Agreements with AEW (Exhibits A, B, and C) under seal, due to the Confidentiality provision in each of the agreements. In lieu of attaching fully redacted versions to this Petition, Petitioners have inserted placeholder pages for these Exhibits.

## Factual Allegations

6. Effective March 1, 2023, Respondent and Petitioner AEW entered into the Agreement, which was the most recent of his three agreements with AEW.

7. Respondent previously entered into two similar contracts with AEW, the first having an effective date of March 1, 2021 (**Exhibit B**), and the second having an effective date of January 17, 2022 (**Exhibit C**).

8. Petitioner Khan signed the Agreement, as well as the previous contracts, on behalf of AEW in his capacity as its Chief Executive Officer, General Manager, and Head of Creative.

9. The Agreement provides:

> …[a]ll disputes between [Nemeth] and AEW, including, without limitation, any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement, shall be resolved for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures.

(Exhibit A at Section 16.1).

10. Respondent's March 1, 2021, and January 17, 2022, contracts with AEW contained arbitration provisions that were identical to Section 16.1 of the Agreement.

11. In a blatant attempt to avoid being bound by his unequivocal agreement to arbitrate all disputes arising out of or relating to his Agreement, on February 21, 2025, Respondent filed a civil action in the Superior Court of Los Angeles County, California, Case No. 25STCV05002, bringing claims against Petitioners for Breach of Contract (i.e., his Agreement), Breach of the Implied Covenant of Good Faith and

Fair Dealing (also directly related to his Agreement) and "Intentional Interference with Prospective Advantage," (arising out of his business relationship with Petitioners, i.e., his Agreement) (hereafter referred to as the "California State Court Complaint"). (*See* Respondent's California State Court Complaint, attached as **Exhibit D**).

12. In an attempt to conceal the fact that the claims he has brought against Petitioners are subject to mandatory arbitration, Respondent failed to attach a copy of his Agreement with AEW to the California State Court Complaint, under seal or otherwise.

13. Nevertheless, the Agreement and previous contracts referenced herein and attached as Exhibits A, B, and C, which will be proposed for filing under seal, are true and correct copies of the contracts that Respondent signed with AEW.

14. Despite agreeing to arbitrate any and all disputes against AEW, and after being informed by Petitioners that he must proceed with his disputes in arbitration, as opposed to in a judicial forum, Respondent has, nevertheless, ignored his contractual obligations and binding authority requiring arbitration, has instead filed suit in Los Angeles County requesting a trial by jury, and has stated his intent to oppose any attempt by Petitioners to compel this matter to arbitration.

## Federal Arbitration Act

15. By initiating this civil action in the Superior Court for Los Angeles County, and despite prior reminders by Petitioners, Respondent has failed and refused to comply with the requirements of his agreement to arbitrate his disputes with AEW..

16. The Agreement containing the arbitration clause attached to this petition as Exhibit A affects commerce within the meaning of the FAA because Petitioner AEW is a professional wrestling promotion that holds live, televised events throughout the United States as well as internationally, and Respondent contracted to perform at AEW's live events.

17. Because the contract in question is one that affects commerce, the arbitration provision contained within that contract is valid, irrevocable and enforceable within the meaning of 9 U.S.C. § 2.

18. The FAA, therefore, provides this Court with the authority to enter an order "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

WHEREFORE, Petitioners respectfully request that this Court enter judgment for Petitioners:

(a) Declaring the arbitration clause in Exhibit A valid and enforceable against Respondent as to both Petitioners;

(b) Directing Respondent to pursue the claims he has made that relate to or arise under his business relationship with AEW and its CEO Tony Khan in arbitration, in the manner provided for in the Agreement;

(c) Ordering Respondent to pay Petitioners' reasonable attorneys' fees and costs in this proceeding; and

(d) Any other such relief to which Petitioners may be entitled.

        Respectfully submitted,

        **JACKSON LEWIS P.C.**

Dated: <u>March 14, 2025</u>      By:   /s/ *B. Tyler White*
                                          B. Tyler White
                                          Florida Bar No. 0038213
                                          tyler.white@jacksonlewis.com
                                          James D. McGuire
                                          Florida Bar No. 1032198
                                          james.mcguire@jacksonlewis.com
                                          501 Riverside Avenue, Suite 902
                                          Jacksonville, FL 32202
                                          904-638-2655

        *Counsel for Petitioners*

# EXHIBIT A

# Proposed for filing under seal

# EXHIBIT B

# Proposed for filing under seal

# EXHIBIT C

# Proposed for filing under seal

# EXHIBIT D

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/21/2025 1:31 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

Michael W. Caspino (CA State Bar No.: 171906)
PRICE CASPINO
30442 Esperanza
Rancho Santa Margarita, CA 92688
Telephone:     (949) 899-9188
Email: mcaspino@pricecaspino.com

Attorneys for Plaintiff
RYAN NEMETH

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| RYAN NEMETH,<br><br>　　　　　　　　Plaintiff<br><br>vs.<br><br>ALL ELITE WRESTLING, a limited liability company; TONY KHAN, an individual; PHIL BROOKS, an individual; and DOES 1 through 20, inclusive,<br><br>　　　　　　　　Defendants. | CASE NO.: 25STCV05002<br><br>**COMPLAINT FOR:**<br><br>1. **ASSAULT;**<br>2. **BREACH OF CONTRACT;**<br>3. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; and**<br>4. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE**<br><br>Complaint filed:　February 14, 2025<br>Trial date:　　　TBD |

COMES NOW, Plaintiff Ryan Nemeth ("Plaintiff" or "Nemeth"), complaining and alleging as follows against Defendants All Elite Wrestling ("AEW"), Tony Khan ("Khan"), Phil Brooks (Brooks) and Does 1 through 20 (collectively herein "Defendants"), as follows:

## INTRODUCTION

Ryan Nemeth is a successful actor, comedian and stuntman. Nemeth also followed his older brother Nic's career and has established himself as a star performer on the professional wrestling circuit. Nemeth was under contract with AEW. AEW is owned by Shahid and Tony Khan. Shahid

1
COMPLAINT

Khan is the owner of the NFL franchise Jacksonville Jaguars. When his son Tony managed to alienate most everyone within the Jaguars organization (including star NFL players), Tony was moved to a leadership role in the Khan family-owned Fulham Football Club. Tony ended up mismanaging Fulham, leading to multiple lawsuits against the Club. Since he was a child, Tony loved professional wrestling and had an obsession with certain wrestlers. The Khan family formed AEW to provide Tony with something to do, safely away from the family's other ventures. Tony serves as AEW's Chief Executive Officer.

Phil Brooks was another wrestler under contract with AEW and a member of the AEW management team. Tony had a deep fascination with Brooks. Brooks undertook a campaign to terrorize and intimidate Plaintiff, including physical assault. AEW and Tony Khan did nothing to protect Ryan Nemeth and other wrestling performers from despicable conduct on the part of Brooks. AEW turned a blind eye to Brooks' conduct because of Tony's deep admiration for Brooks and because he was their most popular wrestling performer. At Brooks and Tony's insistence, AEW and Tony Khan have undertaken an effort to "black ball" Nemeth so we can never again work in the wrestling business.

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Ryan Nemeth is an individual residing in the State of California, County of Los Angeles.

2. Phil Brooks ("Brooks") is an individual residing in the State of California, County of Los Angeles.

3. Tony Khan ("Khan") is an individual residing in the State of Florida. Here, Khan is pictured at the 2024 NFL draft.



2
COMPLAINT

4. All Elite Wrestling ("AEW") is a limited liability company, organized under the laws of the State of Delaware and domiciled within the State of Florida.

5. Defendants Does 1-10 are individuals with identities that are unknown to Plaintiff. Once Plaintiff ascertains the true identities of Does 1-10, Plaintiff shall amend this Complaint to identify Does 1-10.

6. Defendants Does 11-20 are business entities, form unknown, with identities that are unknown to Plaintiff. Once Plaintiff ascertains the true identities of Does 11-20, Plaintiff shall amend this Complaint to identify Does 11-20.

7. All of the claims and allegations contained herein arose from actions and/or inactions that occurred, or failed to occur, within the State of California, County of Los Angeles.

8. As set forth herein, each Defendant operates within the jurisdiction of this Court. Each Defendant has purposefully availed himself/itself of the benefits of the State of California and this jurisdiction such that sufficient minimum contacts have been established to confer jurisdiction of this Court.

9. Each Defendant is the agent, servant and/or employee of the other Defendants, and each Defendant acted within the course and scope of his, or her, or its authority as an agent, servant and/or employee of the other Defendants.

10. Defendants and each of them, are individuals, corporations, partnerships, and/or other entities that have engaged in, joined in, and/or conspired with the other wrongdoers in carrying out the tortious and unlawful activities described herein.

**GENERAL ALLEGATIONS**

11. On March 1, 2023, Ryan Nemeth entered into a contract with AEW for the period of March 1, 2023, to February 29, 2024. Under this contract, Nemeth was to solely and exclusively wrestle for AEW. Nemeth was not on salary. Nemeth was paid by appearance.

12. Prior to entering the professional wrestling realm, Nemeth had been a successful actor, comedian and stuntman.

13. Brooks is another wrestler who is under contract with AEW. Brooks goes by the stage name "CM Punk."

14. At all relevant times mentioned herein, Brooks was also an employee of AEW, serving a role in executive leadership.

15. In early 2023, Brooks assaulted and battered two fellow wrestlers known by the stage names Matt and Nick Jackson. Brooks is known to have an uncontrollable temper and often lashes out in violent tirades against others. Thus, Defendants were on notice regarding Brooks' violent proclivities.

16. Rather than removing Brooks from the AEW roster of wrestlers, Tony Khan made the decision to merely suspend Brooks for a few months. Brooks is one of AEW's most popular wrestlers and Khan did not feel that Brooks could be removed without a substantial loss in profit for AEW. Further, Khan has a very deep personal affinity for Brooks. Khan made the conscious decision to keep Brooks as a part of AEW although he knew that Brooks is prone to lashing out in violent episodes and to injure others.

17. Beyond his deep feelings for Brooks, Khan represented to AEW executives and wrestlers that the TBS network had produced the "AEW Collision" show contingent upon Brooks involvement as the show's star. This was all the more reason for Khan to keep Brooks, in spite of his violent propensities.

18. During his suspension, for unknown reasons, Brooks made it known that he despised Nemeth. Nemeth did nothing to Brooks whatsoever, but Brooks made it well-known that he was angry with Nemeth. Brooks has a notorious history for taking violent action against others for no reason.

19. On April 16, 2023, Nemeth contacted executives within AEW to tell his employer that he was worried Brooks would come back to the wrestling circuit following his suspension and assault Nemeth.

20. On June 21, 2023, following Brooks' return to the wrestling circuit, he assaulted Nemeth in the male talent locker room. In a menacing manner, Brooks shouted at Nemeth, "Do we have a fucking problem? Do we need to step outside and handle this like men?" Nemeth was cornered by Brooks and did everything he could in order to de-escalate the situation.

21. The next day, Nemeth was contacted by Tony Schivaone and other executives from

1  AEW to explain what happened. Nemeth calmly and factually explained that he was attacked by
2  Brooks in the locker room.

3      22.    Following the assault, nothing happened to Brooks as far as punishment from AEW.

4      23.    It is well known in the wrestling industry that "benching" a wrestler is a form of
5  punishment. That is, the wrestling performer is not scheduled for a match and thus is not paid.
6  Benching a wrestler is a customary manner of punishing a wrestler.

7      24.    Following the incident with Brooks, Nemeth greatly feared being benched by AEW.
8  Nemeth spoke with AEW's in-house counsel and attorneys from Latham & Watkins (outside counsel
9  for AEW). All of the attorneys promised that Nemeth would not be benched.

10     25.    Following his June 22 conversation with Tony Schivaone, et al., Nemeth was not
11 booked for a match for over two months.

12     26.    Because Nemeth was not booked for matches, his income stream from AEW dried up.
13 More importantly, his popularity and marketability faded from being absent from the professional
14 wrestling circuit.

15     27.    On June 17, 2023, Nemeth again contacted AEW's legal department to complain that
16 he was being punished for doing nothing. It was then that Nemeth discovered the real reason why he
17 was being benched. Brooks had insisted upon this.

18     28.    Because Tony Khan had such a deep admiration for Brooks (bordering on an
19 obsession), Khan went along with Brooks' desires to ruin Nemeth's career.

20     29.    On August 12, 2023, Nemeth was finally booked for an event in Greensboro, North
21 Carolina.

22     30.    On the morning of August 12, Nemeth was walking through the hotel lobby to board
23 a shuttle to the sports arena where the wrestling match would take place. He saw Brooks. Brooks
24 immediately took out his phone and began to text.

25     31.    A moment after that text was sent, Nemeth received a text from AEW supervisor Pat
26 Buck saying that he needed to speak with Nemeth as soon as he got to the arena.

27     32.    Upon arriving at the arena, Nemeth sought out Pat Buck. Buck told Nemeth that he
28 needed to leave the arena immediately and that travel would be arranged for him to fly out on that

same day.

33. Nemeth was embarrassed and humiliated in front of other wrestlers who witnessed him being kicked out of the arena. More importantly, fans observed him leaving the arena. Pictures were taken and the expulsion became "viral" on social media. This humiliation caused irreparable damage the marketability and reputation of Nemeth.

34. This entire episode was engineered by Brooks. Brooks demanded that Nemeth be told to leave and that he would be flown-out of Greensboro immediately. Khan, for his part, went along with Brooks out of his deep admiration.

35. On August 15, 2023, Nemeth contacted AEW's legal group and complained about being ejected from the event at the direction of Brooks. AEW lawyers were themselves stunned and could offer no explanation for the conduct of Brooks and Khan.

36. On November 18, 2024 Nemeth wrestled for the last time for AEW.

37. Nemeth continued to follow-up with AEW's legal department, in the hope of trying to resolve this situation and to avoid further conflict. In a bizarre email, AEW attorney Chris Peck reached out and threatened legal action against Nemeth and accused him of employing a "ghost writer" in his emails.

38. On November 25, 2024 Brooks left AEW to wrestle for the organizations main competitor, WWE.

39. Khan was heartbroken by the departure of Brooks, his idol and that he adored in every way.

40. Khan was furious with Nemeth. Khan believes that Brooks left AEW because of Nemeth.

41. The Defendants have embarked upon a campaign to "blackball" Nemeth from professional wrestling. Specifically, Tony Khan blames Nemeth for Brooks leaving AEW and has used his significant resources to make sure that Nemeth can never again make a living in wrestling.

42. The conduct of each of the Defendants was malicious in that Defendants intended to cause injury to the Plaintiff. Defendants acted willfully and with a conscious disregard for the rights of the Plaintiff.

## FIRST CAUSE OF ACTION

### (ASSAULT - Against Defendant Brooks and Does 1-20)

43. Plaintiff realleges and restates each of the foregoing paragraphs as though fully set forth in this cause of action.

44. Brooks intentionally acted to cause harmful contact with Plaintiff.

45. Plaintiff reasonably believed that he was about to be harmed.

46. Brooks threatened to harm Plaintiff.

47. Plaintiff did not consent to Brooks' conduct.

48. Plaintiff was harmed by Brooks' actions.

49. Brooks' conduct was a substantial factor in causing Plaintiff's harm.

## SECOND CAUSE OF ACTION

### (BREACH OF CONTRACT - Against Defendants AEW and Khan and Does 1-20)

50. Plaintiff realleges and restates each of the foregoing paragraphs as though fully set forth in this cause of action.

51. Plaintiff entered into a contract with AEW.

52. Plaintiff fulfilled all obligations under the contract.

53. Defendants failed to fulfill their obligations under the contract, including:

　　a. Failing to schedule Plaintiff for matches,

　　b. Failing to protect Plaintiff from harm form other employees,

　　c. Obstructing Plaintiff from competing in matches.

54. Plaintiff was harmed by Defendants' breach.

55. Defendants' actions were a proximate cause of Plaintiff's harm.

## THIRD CAUSE OF ACTION

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - Against Defendants AEW, Khan and Does 1-20)

56. Plaintiff realleges and restates each of the foregoing paragraphs as though fully set forth in this cause of action.

57. Plaintiff entered into a contract with AEW.

58. Plaintiff fulfilled all obligations under the contract.

59. By failing to schedule Plaintiff for matches, failing to protect him from harm from other employees and obstructing Plaintiff from competing in matches, Defendants denied Plaintiff from receiving benefits under the contract.

60. Defendants did not act fairly and in good faith.

61. Plaintiff was harmed by Defendants actions.

## FOURTH CAUSE OF ACTION

## (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE - Against All Defendants)

62. Plaintiff realleges and restates each of the foregoing paragraphs as though fully set forth in this cause of action.

63. Plaintiff and other competing wrestling leagues were in a potential relationship that probably would have resulted in an economic benefit to Plaintiff.

64. Defendants knew of this relationship.

65. Defendants engaged in conduct detrimental to Plaintiff.

66. By engaging in this conduct, Defendants intended to disrupt this relationship.

67. The relationship was disrupted.

68. Plaintiff was harmed.

69. The Defendants' actions were a substantial factor in causing said harm.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1. Awarding compensatory damages against all Defendants, jointly and severally, in an amount of be proven at trial;

2. Awarding appropriate equitable relief, including any injunctive or declaratory relief necessary to prevent further harm to Plaintiff;

3. Awarding appropriate punitive damages at the maximum amount permitted by law;

4. Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs; and

5. Awarding such other relief as this Court may deem appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all issues so triable.

DATED: February 14, 2025           PRICE CASPINO

By: _____
Michael W. Caspino
Attorneys for Plaintiff Ryan Nemeth